UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CATHERINE E. YOUNGMAN,                        MEMORANDUM
                Plaintiff,                      AND ORDER
       - against
ROBERT BOSCH LLC, et al.,                     11-CV-2521 (SLT) (JO)
                Defendants.
------------------------------------------------------------X

James Orenstein, Magistrate Judge

      Defendants Robert Bosch LLC, Robert Bosch Tool Corporation (collectively, "Bosch"), Lowe's Home Centers, Inc., and Lowe's Companies, Inc. (collectively, "Lowe's") seek leave to file an amended Answer that asserts affirmative defenses under New Jersey law to the plaintiff's tort claims. *See* Docket Entry ("DE") 39 (original motion); DE 42 (supplemental motion papers); Fed. R. Civ. P. 15(a)(2). Plaintiff Catherine E. Youngman ("Youngman"), in her capacity as the Trustee of the bankruptcy estate of original plaintiff Dominik Charkiewicz ("Charkiewicz"), opposes the amendment: she claims that the court must apply the substantive law of New York, and that the proposed amendment is therefore futile; in addition, she contends that the motion is untimely. *See* DE 40; DE 46. For the reasons set forth below, I grant the defendants leave to amend their Answer.[1]

---

[1] The case law of this circuit is inconsistent as to whether a magistrate judge has the authority to deny a motion to amend where, as a practical effect, such a ruling is dispositive. *Compare Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012) (remanding to district court to conduct *de novo* review of magistrate judge's denial of leave to amend which effectively dismissed state law claims) (citing *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008)) *with Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (characterizing a motion to amend as a "nondispositive" motion that a magistrate judge may decide) *and Kilcullen v. New York State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003) (same) *and Marsh v. Sheriff of Cayuga County*, 36 F. App'x 10, 11 (2d Cir. 2002) (citing 28 U.S.C. § 636(b)(1)(A) as authority for the proposition that magistrate judge had authority to deny a motion to amend the complaint). Regardless of whether the denial of a motion to amend should be considered "nondispositive," it is apparent that permitting an amendment cannot dispose of a claim or defense. I therefore conclude that under any reading of applicable law, I have authority to grant the instant motion.

I.      Background

Charkiewicz filed this action in state court on February 25, 2011. He asserted tort claims under New York law based on injuries he claimed to have sustained as a result of using a table saw that the defendants manufactured and sold. *See generally* DE 1 at 7-27 (Verified Complaint) (the "Complaint"). In his Complaint, Charkiewicz stated that he "resides" in Brooklyn, New York; that he purchased the table saw at a Lowe's store in Staten Island, New York on December 7, 2007; and that he sustained an injury while using the saw at an address in Bayonne, New Jersey on February 28, 2009. *Id.* ¶¶ 2, 45-47. On May 25, 2011, the defendants – all of them corporate entities incorporated, and with principal offices, in states other than New York – then invoked federal diversity jurisdiction to remove the case to this court. DE 1 at 1-3 (removal notice).

On June 1, 2012, the defendants filed the instant motion. They asserted that discovery in this case had revealed that the Bayonne site of the accident mentioned in the Complaint was in fact Charkiewicz's residence at the time. Based on that fact and their analysis of applicable choice-of-law rules, the defendants argued that this case is governed by the law of New Jersey; as a result, they asked leave to file an amended complaint raising affirmative defenses under New Jersey law. DE 39. Youngman (who was substituted as plaintiff after being appointed as the Trustee for Charkiewicz's bankruptcy estate, *see* DE 35; Fed. R. Civ. P. 25) opposes the motion on two grounds. First, she contends that the addition of affirmative defenses under New Jersey law would be futile because Charkiewicz was a New York resident at all material times for the purposes of determining controlling law, and that this action arises under the substantive law of New York. Second, she argues that the defendants waited too long to seek leave to amend their Answers. DE 40; DE 46.

II.     Discussion

Once a party is no longer permitted to amend its pleading as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), that party may only amend its pleading upon the consent of its adversaries or by leave of the court. Fed. R. Civ. P. 15(a)(2). Such leave shall be "freely give[n] … when justice so requires." *Id*. Although the determination of a motion for leave to amend is committed to the court's sound discretion, *see Dluhos v. Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 70 (2d Cir. 1998), a court should not deny leave to amend absent reasons such as (among others not pertinent here) "undue delay" or the "futility" of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). I address each proffered basis for denying leave to amend in turn below.

   A.     Undue Delay

Youngman contends that I should deny the motion as untimely. She notes that that the defendants have had all the information necessary to conduct a choice-of-law analysis and assert defenses under New Jersey law since the outset of this litigation. Moreover, Youngman asserts that she shaped her discovery strategy around an assumption that New York law would control, that she would have chosen a different discovery strategy had she known that New Jersey law applies, and that granting the motion will therefore cause her prejudice. *See* DE 46 at 58-65.

I disagree that the defendants had sufficient notice, at the start of the case, of all the facts pertinent to the choice-of-law analysis. As discussed further below, while the place of the tort is an important factor, with respect to certain types of claims it is also important to know the domicile of each party. And while the Complaint did reveal the site of the tort, it obscured facts necessary to determine Charkiewicz's domicile. Indeed, by using the present tense to allege that Charkiewicz

3

"resides" in Brooklyn (Complaint ¶ 2) and then omitting any mention of the fact that the specified site of the accident (*id.* ¶ 47) was Charkiewicz's residence at the time, the Complaint could reasonably have lulled the defendants into the false belief that it was not worth even considering whether Charkiewicz might be domiciled in any state other than New York.

To be sure, long before they moved to amend their Answer, the defendants received information in discovery that should have begun to dispel the confusion that the Complaint created. As a result, it is possible that the defendants could have filed their motion before discovery was completed. However, I do not conclude that the defendants delayed the motion in bad faith or that an earlier motion would have avoided all of the discovery inefficiencies that granting the motion now will create. In that regard, I note that "[d]elay alone, in the absence of bad faith or prejudice, is usually not a sufficient reason for denying a motion to amend." *Go v. Rockefeller Univ.*, 2008 WL 619039, at *4 (S.D.N.Y. Mar. 6, 2008) (collecting cases).

A court may deny leave to amend that is the product of "inordinate delay," but only if "no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal citations omitted). I do not think the delay here qualifies as inordinate, nor can I conclude, in light of the Complaint's ambiguity concerning Charkiewicz's residence, that the defendants have no satisfactory explanation for the delay. But even if I were to find both inordinate delay and no satisfactory explanation for it, I would not deny leave to amend on the basis of undue delay because the delay has not prejudiced Youngman. To the extent she has not sought information pertinent to litigating

the proffered defenses under New Jersey law, I can and will permit the parties to exchange supplemental discovery.[2]

Accordingly, I will not exercise my discretion to deny leave to amend on the ground that the defendants engaged in undue delay before filing their motion. If the pertinent choice-of-law rules prescribe applying the law of New Jersey to Youngman's claims, in the absence of any cognizable prejudice, the court should not avoid doing so simply because the defendants did not raise the issue earlier. I therefore proceed to the issue of whether the assertion of defenses under New Jersey law would be futile because New York law is controlling.

B.  Futility: Choice-of-Law Analysis

In order to assess whether the defendants' proposed amendment would be futile, I must engage in a choice-of-law analysis to determine whether any of the plaintiff's claims arise under the substantive law of New Jersey, thereby making the assertion of affirmative defenses under that state's law viable. Because this court has diversity jurisdiction over the action and is located in New York, I apply the choice-of-law principles of New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

---

[2] For purposes of analysis, I assume that the consequences of Youngman's decision to shape her discovery strategy around an assumption that the defendants would never seek to assert any defenses under New Jersey law is a cognizable form of prejudice. Such an assumption is not necessarily warranted: Charkiewicz and his successor plaintiff Youngman (both of whom have been represented throughout this case by the same counsel) had every reason to expect that once the defendants learned all of the facts that support the proposition that Charkiewicz is domiciled in New Jersey rather than New York, they would seek to assert defenses under the relatively more defense-friendly law of that state. "For example," as Youngman observes in opposing the motion, "in New York the retail seller of a defective product is held strictly liable when it causes injury, while in New Jersey a retailer is not, barring some type of affirmative conduct other than the sale." DE 46 at 60-61. It is therefore hardly obvious that a reasonable litigant in the plaintiff's position, realizing the possibility that the defendants might ultimately learn of facts that would support the assertion of defenses under New Jersey law, would deliberately avoid seeking discovery that would be useful in litigating such defenses.

5

Under New York's choice-of-law rules, "the first step … of [the] inquiry is to determine whether there is an 'actual conflict' between the laws invoked by the parties." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). If such a conflict exists in a tort case, the court must then apply an "interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994) (discussing the choice-of-law rules originally formulated in *Babcock v. Jackson,* 12 N.Y.2d 473 (1963)). Performing that interest analysis requires the court to identify the type of rules that are in conflict. If the conflict involves rules that regulate conduct, New York law usually applies the law of the place of the tort ("*lex loci delicti*"). *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 423 (S.D.N.Y. 2004); *see also Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). On the other hand, if the conflict involves rules that allocate loss – that is, rules that prohibit, assign, or limit liability after the tort occurs – the court must apply the principles set forth in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972), which take into account the domicile of the parties, the conduct at issue, and the purposes of the applicable substantive law. *Padula*, 84 N.Y.2d at 522; *Lee*, 166 F.3d at 545.

An "actual conflict" between the laws of two states arises where there are "relevant substantive differences that could have a significant impact on the outcome of the case." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005). Such differences exist here both with respect to rules that regulate conduct and rules that allocate loss. With respect to the former, for example,

> New York courts permit separate claims for negligence, failure to warn and breach of implied warranty to be brought in conjunction with product liability claims for design and manufacturing defects, whereas the New Jersey Products Liability Act (the 'NJPLA') … subsumes common law product liability claims into one statutory cause of action for strict liability and does not allow separate negligence, breach of

> warranty or failure to warn claims for injuries caused by an allegedly defective product.

*Rice v. Kawasaki Heavy Indus.¸ Ltd.*, 2008 WL 4646184, at *4 (E.D.N.Y. Oct. 17, 2008) (citing N.J. Stat. Ann. § 2A:58C-1 to -11); *see also Cacciola v. Selo Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) (causes of action involving the duty and standard of care applicable to manufacturers, *i.e.*, negligence and strict products liability claims, are, for choice of law purposes, conduct-regulating). Similarly, the two states' comparative negligence rules – which are loss-allocating, *O'Brien v. Marriot Int'l, Inc.*, 2006 WL 1806567, at *2 (E.D.N.Y. June 29, 2006) – also diverge. New York has a "pure" comparative negligence regime, which reduces a plaintiff's damages in proportion to the culpability of his own conduct but does not bar recovery where the plaintiff's culpability exceeds the defendant's. *Medina v. Delta Air Lines, Inc.*, 2011 WL 3625110, at *6 (E.D.N.Y. Aug. 16, 2011) (citing N.Y. C.P.L.R. § 1411). New Jersey law, in contrast, "bars a plaintiff from recovering on a negligence claim if the plaintiff's negligence was greater than the combined negligence of the defendants against which recovery is sought." *Aly v. Fed. Express, Inc.*, 2008 WL 4378233, at *7 (D.N.J. Sept. 23, 2008) (citing N.J. Stat. Ann. § 2A:15-5.1).

The affirmative defenses the defendants seek to assert under New Jersey law thus implicate "actual conflicts" with New York that require both types of interest analysis – one for conduct-regulating rules and another for loss-allocating rules. I perform each analysis in turn below. However, I do not perform a conflict analysis with respect to each individual claim. Because I determine, for the reasons explained below, that New Jersey law governs both sets of rules, such individualized analysis is unnecessary: in essence, to the extent there is any conflict between the laws of New York and New Jersey, I conclude that the conflict must be resolved in favor of New Jersey, and that therefore any related defense asserted under New Jersey law is

viable. Conversely, to the extent that the laws of New York and New Jersey are consistent, any related defense asserted under New Jersey law must by definition be viable under New York law as well.

### 1. The Location of the Alleged Tort

As noted above, in choosing between the conflicting conduct-regulating rules of two states in the context of a tort action, New York law applies the law of the place of the tort. *Allianz Ins. Co.*, 353 F. Supp. 2d at 423. There is no dispute that Charkiewicz's accident took place in Bayonne, New Jersey. That should normally end the inquiry: the accident occurred in New Jersey, and so New Jersey law should apply, thereby making an affirmative defense asserted under New Jersey law viable. Youngman, however, does not let it rest there: she argues that the alleged tort "occurred" in New York because that is where Charkiewicz purchased the saw, and consequently where the last alleged "wrong" by the defendants took place. DE 46 at 41-46. Her argument is contrary to both logic and applicable law.

As Youngman acknowledges in her supplemental memorandum of law, "when the defendant's negligent conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." DE 46 at 40 (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 195 (1985)); *see also*, *e.g.*, *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 369 (S.D.N.Y. 2011); Restatement (First) of Conflict of Laws § 377. After correctly articulating the rule as set forth in *Schultz*, Youngman distorts its meaning by omitting the very next sentence from that opinion: "Thus, the locus in this case is determined by where the plaintiffs' injuries occurred."

*Schultz*, 65 N.Y.2d at 195. The lesson of *Shulz* is thus diametrically opposed to the proposition for which Youngman enlists its support.

*Shulz* is by no means an outlier. Virtually every pertinent case confirms that a tort "occurs" for purposes of choice-of-law analysis at the location of the accident. *See*, *e.g.*, *Devore v. Pfizer, Inc.*, 867 N.Y.S.2d 425, 428 (App. Div. 2008) ("The locus of a tort is generally defined as the place of the injury."); *Burnett v. Columbus McKinnon Corp.*, 887 N.Y.S.2d 405, 407 (App. Div. 2009) ("[T]he situs of the tort … is the place of the injury, rather than the location where the allegedly defective product was manufactured"); *Emslie v. Recreative Indus., Inc.*, 2010 WL 1840311, at *9 (W.D.N.Y. May 7, 2010) (holding that British law governed a products liability case involving an ATV designed and manufactured in New York and involved in an accident occurring in England); *Rice*, 2008 WL 4646184, at * 5 ("The … defendants' allegedly tortious conduct occurred in New Jersey, because that is the jurisdiction in which the motorcycle accident … occurred, which is the last event necessary to make [the] defendants potentially liable for the plaintiff's injuries.").[3]

The prevalent interpretation of the rule is also far more logical than the one Youngman advocates. The rule is that "the place of the wrong is considered to be the place where *the last event necessary to make the actor liable* occurred." *Schultz*, 65 N.Y.2d at 195 (emphasis added).

---

[3] The two other cases that Youngman discusses in her opposition brief are not to the contrary. Youngman contends that in *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996), a case arising from the crash of a Pan-Am airplane in Lockerbie, Scotland in 1988, the court declined to apply Scottish law on the ground that Scotland was not the jurisdiction in which defendant airline's last "causative misconduct" took place. *See* DE 46 at 37-38. Not so: consistent with the analysis set forth above, the court in *Pescatore* applied the law of Ohio because that was where the plaintiff, an Ohio resident, had suffered the harm forming the basis of her wrongful death claim. *See* 97 F.3d at 14-15. The other case on which Youngman relies, *Mann v. Cooper Tire Co.*, 761 N.Y.S.2d 635 (App. Div. 2003), simply did not use, interpret, or distinguish the rule of *lex loci delicti* in deciding which law to apply to claims arising from a car accident that occurred in Quebec. Instead, the court cited New York's numerous "significant contacts" with the case as a reason to apply the law of New York. Whatever the merits of that ruling, it says nothing about where a tort occurs within the meaning of New York law.

Youngman suggests that the last event necessary to render the defendants liable in this case was the sale of the table saw in Staten Island. DE 46 at 36, 40. But that reading of the rule is nonsensical: if Charkiewicz had never used the table saw after buying it in New York – that is, if the sale truly had been the "last event" of any relevance to this case – he would never have been injured and the defendants could not be held liable for anything at all. It was not until Charkiewicz used the saw and injured himself that it became possible to hold the defendants liable to him for their alleged negligence. I therefore conclude that the only permissible reading of New York's choice-of-law rules is that the substantive law of New Jersey governs all conduct-regulating rules at issue in this case.

3. Charkiewicz's Domicile

A court choosing between the conflicting loss-allocation rules of two states must apply the analysis set forth in *Neumeier*, by considering the parties' respective domiciles, the relevant conduct, and the purposes of the applicable substantive law. *See Padula*, 84 N.Y.2d at 522; *Lee*, 166 F.3d at 545. *Neumeier* teaches that a court should apply one of three different approaches based on the parties' domiciles:

> The first applies when the parties are domiciled in the same state, in which case the law of the state of the common domicile applies. The second rule applies when the parties are domiciled in different states and the law of each state is favorable to its respective litigant. In that case, the law of the place where the tort occurred applies. The third *Neumeier* rule applies to all other split-domicile scenarios[,] [where] [t]he law of the state where the tort occurred presumptively controls, except where displacing the law of the place of the tort will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Antaeus Enters., Inc. v. SD-Barn Real Estate, LLC*, 480 F. Supp. 2d 734, 742-43 (S.D.N.Y. 2007) (internal alterations and citations omitted); *accord Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 73-74 (1993). Courts occasionally use different language to describe the scope of circumstances in

which the third approach under *Neumeier* applies. Thus, some courts have applied the third approach where "the tort did not occur in the domicile of either party." *O'Brien*, 2006 WL 1806567, at *4; *see also*, *e.g.*, *Van Dyke v. Columbia Mach., Inc.*, 246 F. Supp. 2d 191, 194 (W.D.N.Y. 2003); *Wong v. Marriott Hotel Servs., Inc.*, 2009 WL 5538644, at *3 (E.D.N.Y. Dec. 18, 2009). Others simply describe the third approach as a "fall-back" that "applies in all other situations" where neither the first nor the second rule fits. *Greene-Wotton v. Fiduciary Trust Co. Int'l*, 324 F. Supp. 2d 385, 391 (S.D.N.Y. 2003); *see also*, *e.g.*, *Grasso v. Grasso*, 2010 WL 3806388, at * 11 (N.D.N.Y. Sept. 22, 2010) ("[T]he third *Neumeier* rule … applies where the parties are domiciled in different states, but where local law does not favor the respective domicile."); *Antaeus Enters., Inc.*, 480 F. Supp. 2d at 743; *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005).

The first approach plainly does not apply here, as the parties are not all domiciled in the same state.[4] Under either of the remaining approaches, the starting point is an assumption that the case is governed by the law of the place of the tort – which I determine to be New Jersey, as explained above.[5] If the second approach is most apt, that is also the end of the analysis: the court

---

[4] Lowe's is domiciled in North Carolina and Bosch in Delaware. Complaint ¶¶ 3, 7, 11, 16; *see Carroll v. LeBoeuf, Lamb, Green & MacRae, LLP*, 392 F. Supp. 2d 621, 629 n.47 (S.D.N.Y. 2005) (corporation is domiciled in the state of its principal place of business). No party contends that the law of either of those states applies to this action, DE 50 (hearing transcript) at 7-8, and I therefore need not consider those possibilities in performing the choice-of-law analysis. *See Luizzi v. Pro Transport, Inc.*, 2010 WL 3023928, at *12 (E.D.N.Y. Aug. 2, 2010).

[5] Because, for reasons explained below, I conclude that Charkiewicz was domiciled in New Jersey at the time of the accident, I need not decide whether the second or third approach is most appropriate under *Neumeier*, because both approaches result in the application of New Jersey law and thus a conclusion that the proposed affirmative defenses are viable. The characterization in *Antaeus Enterprises, Inc.* of the scope of circumstances in which the third approach is most appropriate arguably excludes some scenarios, including the circumstances of this case. Other

should simply apply the law of New Jersey even if Charkiewicz was domiciled in New York at the time of the accident. If the third approach is applicable, the court should apply the substantive law of New York rather than that of New Jersey only if doing so "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *McDuffie v. Wilner*, 415 F. Supp. 2d 412, 422 (S.D.N.Y. 2006) (citations omitted).

It is only with respect to the latter inquiry that Charkiewicz's domicile will make a difference. If Charkiewicz is not a New York domiciliary – that is, if New York's only meaningful connection with the case is the fact that the table saw that caused the injury was sold here – then displacing New Jersey's law in favor of New York's will do nothing to advance the relevant substantive law purposes. *See*, *e.g.*, *id.* at 422-23 ("New York has no interest in the loss allocation in this case since no party is domiciled in New York."). Thus, if Charkiewicz was domiciled in New Jersey at the time of the accident, this court should apply the loss-allocation rules of New Jersey law rather than those of New York. For the reasons set forth below, I conclude that Charkiewicz was indeed domiciled in New Jersey when he was injured, and that therefore New Jersey law applies.

New York law distinguishes between residence and domicile. *Smith v. Soros*, 2003 WL 22097990, at *5 (S.D.N.Y. Sept. 5, 2003) (citing *Antone v. Gen. Motors Corp.*, 64 N.Y.2d 20, 29

---

courts, however, have made it clear that the third approach applies in all cases where the circumstances do not call for the first or second approach. *See*, *e.g.*, *Schreiber*, 407 F.3d at 50; *Grasso*, 2010 WL 3806388, at * 11; *Greene-Wotton*, 324 F. Supp. 2d at 391. Because none of the defendants is domiciled in New Jersey, the fact that all parties appear to agree that this case arises under either the law of New York or New Jersey (but not the law of either of the states in which the defendants are domiciled) appears to preclude the second approach. The third approach therefore seems to be more applicable than the second, but I would reach the same result under either approach.

(1984)). "[R]esidence requires only 'a significant connection with some locality in the State as the result of living there for some length of time during the course of a year.'" *Id*. (quoting *Antone*, 64 N.Y.2d at 30). Domicile, on the other hand, "requires both a presence in the state and evidence of intent to make the state a permanent home." *Id.* (citing *Rawstorne v. Maguire*, 192 N.E. 294, 295-96 (N.Y. 1934)). New York law further makes clear that a party can have only one domicile at a time, *Hatfill v. Foster*, 415 F. Supp. 2d 353, 368 (S.D.N.Y. 2006), and that the pertinent time for purposes of choice-of-law analysis is the time of the tort rather than any later time. *See Gutierrez v. Swaim Inc.*, 1994 WL 62843, at *2 (S.D.N.Y. Feb. 23, 1994) (citing, *inter alia*, *Gore v. Northeast Airlines, Inc.*, 373 F.2d 717, 722-24 (2d Cir. 1967)).[6] The party alleging domicile has the burden to establish that allegation by clear and convincing evidence. *See Bank of India v. Subramanian*, 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007) (citing, *inter alia*, *Katz v. Goodyear Tire & Rubber Co.*, 737 F. 2d 238, 243-44 (2d Cir. 1984)). With that standard in mind, I review the pertinent evidence below.

      I start with facts that support the proposition that Charkiewicz was domiciled in New York. At all relevant times Charkiewicz maintained an apartment on Bethel Loop in Brooklyn, New York (*see* DE 46 at 3, 16), he had a New York driver's license (DE 47-10 at 9-10) as well as a United States passport issued in 2007 that listed his Brooklyn address (DE 47-10 at 27), and he was registered to vote in New York (*see* DE 46 at 17, 24).[7] The record contains significantly more

---

[6] For the same reason that I conclude the tort occurred, for purposes of choice-of-law analysis, at the site of the injury in New Jersey, I likewise conclude that the tort occurred at the time of Charkiewicz's injury, rather than at the time he purchased the table saw.

[7] Youngman has not submitted documentary evidence of Charkiewicz's ownership or lease of the Bethel Loop apartment nor of his voter registration; however, as Youngman's attorney has included these assertions in a brief filed pursuant to Federal Rule of Civil Procedure 11, *see* DE 46 at 3, 16-17, 24, I take it to be true for the purposes of deciding this motion. The record also includes additional exhibits that post-date Charkiewicz's accident that show additional ties to New York –

information, however, concerning Charkiewicz's connection to New Jersey at the time of his accident.

Charkiewicz began renting the Brooklyn apartment in approximately 1989. He married his wife Dorota in 1996, and the two continued to reside in the Brooklyn apartment for several years.[8] In 2003, they purchased the three-family residence in Bayonne, New Jersey where Charkiewicz later sustained the injury at issue in this litigation. Although the couple used the Bayonne residence as a rental property, they bought it primarily to enable them to send their children to school in New Jersey, which they believed to have a school system superior to the one available to them in their Brooklyn neighborhood. Consistent with that intent, in 2007 – when the Charkiewiczes' oldest son, Sebastian, was old enough to attend school, Dorota and the couple's two children moved into one of the units in the Bayonne residence, and Sebastian began attending a New Jersey public school. Charkiewicz himself, however, did not fully make the move to Bayonne with his family at that time. Instead, he split his time between the Brooklyn apartment and the Bayonne residence. He typically spent most of the work week in Brooklyn and spent weekends (as well as irregular weeknights) in Bayonne with his family. DE 43-8 ("Charkiewicz Tr.") at 15, 17-18, 45, 54, 214, 219; DE 43-9 ("Dorota Tr.") at 6, 8-9, 22-23, 24-25, 27.

In the absence of any further proof, I would conclude that the defendants had failed to establish by clear and convincing evidence that Charkiewicz was a New Jersey domiciliary at the time of his accident. However, the record also includes evidence that tips the balance in the

---

including an April 2012 summons for jury duty in Brooklyn (DE 46 at 4, ¶ 5; DE 47-10 at 12) and tax documents for tax year 2010 (DE 46 at 4-5, ¶¶ 8, 10; DE 47-10 at 19, 23) – but I disregard them because they are irrelevant to the question of where Charkiewicz was domiciled on February 28, 2009. *See Gutierrez*, 1994 WL 62843, at *2.

[8] I refer to Mrs. Charkiewicz by her first name as a convenient shorthand because she shares a first initial and last name with her husband; I intend no disrespect.

defendants' favor: namely, that in submitting his tax returns and seeking bankruptcy protection, Charkiewicz consistently made statements under penalty of perjury that characterized New Jersey as his home and disavowed having moved there any later than 2007. In their federal personal income tax returns for 2007, 2008, and 2009, the Charkiewiczes listed the Bayonne residence as their "home address." DE 43-11 at 34-72. In each of those years, the Charkiewiczes also filed full-year resident tax returns with the state of New Jersey, DE 43-16, and "non-resident/part-year resident" tax returns with the state of New York, DE 43-15 at 2-51.

In April 2010, the Charkiewiczes filed a petition for bankruptcy protection in the District of New Jersey. In their petition, the Charkiewiczes listed the Bayonne residence as their home address. By itself, that fact is not relevant, as it occurred after the alleged tort at issue here. What is relevant is that in addition to describing New Jersey as their home state at the time of the petition, the Charkiewiczes also indicated that it had been their home for the preceding three years. Specifically, they checked the box corresponding to the answer "none" in response to the following request for information: "If the debtor has moved within the three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse." DE 43-10 (Bankruptcy Petition) at 42, question number 15.

By making repeated statements to the governments of three jurisdictions, each under penalty of perjury, describing New Jersey as his home and full time residence, and by disavowing having had any other home during the period from at least April 2007 through the date of the accident at issue here, Charkiewicz clearly and convincingly demonstrated his "presence in the state and evidence of intent to make the state a permanent home." *Smith*, 2003 WL 22097990, at

15

*5. Not only does such proof suffice to satisfy the defendants' evidentiary burden, it also estops Charkiewicz from arguing to the contrary. "A party to a litigation may not take a position contrary to a position taken in an income tax return." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) (quoting *Mahoney–Buntzman v. Buntzman*, 12 N.Y.3d 415, 422 (2009)); *see also Armstrong v. Collins*, 2010 WL 1141158, at *31 (S.D.N.Y. Mar. 24, 2010) (collecting cases).

I therefore conclude that at the time of the accident at issue in this litigation, Charkiewicz was domiciled in New Jersey. As a result, pursuant to the principles articulated in *Neumeier*, New York's choice-of-law rules compel the conclusion that the substantive law of New Jersey applies to all loss-allocating rules implicated by the claims in this case. The same is true with respect to all conduct-regulating rules because the accident occurred, for purposes of New York's choice-of-law rules, in New Jersey. Accordingly, the substantive law of New Jersey governs all claims and defenses in this action, and there is thus no basis to find the defendants' proposed pleadings futile simply because they assert affirmative defenses under New Jersey law.

III.   Conclusion

For the reasons set forth above, I grant the defendants' motion to amend.

SO ORDERED.

Dated: Brooklyn, New York
       February 11, 2013

                                              /s/
                                      JAMES ORENSTEIN
                                      U.S. Magistrate Judge